■ In the Matter of FRANK ROSSI et al., Appellants, v TOWN BOARD OF THE TOWN OF BALLSTON et al., Respondents. [854 NYS2d 573]—

Kavanagh, J.

This is the third legal proceeding commenced within the past four years that involves these parties and the proposed construction of a Wal-Mart Supercenter on property owned by petitioners within the Town of Ballston, Saratoga County. Petitioners have claimed throughout these proceedings that respondent Town Board of the Town of Ballston has used the enactment of local laws within this period as a pretext to bar the construction of this store within the town. The Town Board claims that the actions challenged by petitioners have all been designed to allow the Town Board additional time to review and revise existing land use measures to ensure that they continue to serve the community interest and its long-term needs. Since each of these legal proceedings have sought to address issues which have been raised in this appeal, some review of what has previously transpired is in order.

On November 5, 2003, petitioners applied for subdivision approval for a large parcel of real property they owned in the town. That application was still pending when more than one year later, on March 1, 2005, the Town Board enacted Local Law No. 2 (2005) of the Town of Ballston (hereinafter Local Law No. 2), which imposed a moratorium on the construction of all large scale commercial and residential projects within the town.[1] The stated purpose for the moratorium was to limit residential and commercial development within the town while the Town Board considered comprehensive changes to its zoning ordinance. The moratorium was to last six months and it would

---

1. This was the third moratorium that the Town Board had enacted in a three-year period. On February 4, 2003, it enacted a six-month moratorium pursuant to Local Law No. 1 (2003) of the Town of Ballston to update its existing zoning scheme, and in October 2004 it approved Local Law No. 7 (2004) of the Town of Ballston that imposed another six-month moratorium so that the Town Board could study the disposal of sewerage within the Ballston Lake Watershed.

not apply to any site plan application that had been received prior to February 2, 2005.[2]

Two weeks after the moratorium took effect, respondent Wal-Mart Stores, Inc. (hereinafter Wal-Mart), with petitioners' written approval, filed with the Town Board a document entitled "Application for Sketch Plan Conference" which was dated February 14, 2005. Simultaneously, petitioners filed an application seeking to amend their pending subdivision proposal so as to include within it fewer, but albeit larger, lots to be developed for commercial use. On March 4, 2005, the Town's Building Inspector denied Wal-Mart's application finding that it was a new application, not an amendment to petitioners' November 2003 application for a subdivision, and therefore barred by the existing moratorium. Wal-Mart did not appeal that decision.

Instead, petitioners commenced a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, seeking to annul the local law establishing the moratorium and, in the alternative, asking that a declaration be issued to the effect that Wal-Mart's application was in fact part of petitioners' original subdivision proposal, and therefore not barred by the moratorium. Petitioners argued that Local Law No. 2 should be annulled because it was enacted for the sole purpose of preventing the construction of a Wal-Mart store within the town and not because of any legitimate concern regarding land use. The Town Board contended that Local Law No. 2, and the six-month moratorium, was necessary to give it time to assess the impact on the surrounding community of numerous large scale developments that had recently been proposed for construction within the town.[3] In a decision dated May 12, 2005, Supreme Court (Nolan, J.) declared Local Law No. 2 valid and enforceable and dismissed the proceeding/action brought by petitioners challenging it. No appeal was taken from this determination.

On June 5, 2006, at the end of the moratorium, the Town Board enacted proposals which substantially revised the Town's comprehensive plan and adopted a State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) finding statement with a negative declaration as well as Local Law No. 5 (2006) of the Town of Ballston (hereinafter Local Law No. 5) which revised its existing zoning ordinance. This law provided

2. The law also provided that the Town Board could extend the moratorium for an additional six months without the necessity of a public hearing.

3. In addition to the Wal-Mart Supercenter (a 203,091 square-foot facility on 32.5 acres of property), evidence submitted indicated that a second "big box" facility, as well as a 780 residential housing unit, were also being proposed for a development on property located within the town.

that any proposal for the construction of a building in the town with a footprint in excess of 90,000 square feet, or a length greater than 300 linear feet, or any proposed development site greater than eight acres had to include an application for the creation of a Planned Unit Development District (hereinafter PUDD) that would be submitted to the Town Board for its approval.

One month later, Wal-Mart, with petitioners' written authorization, submitted an application for the enactment of a PUDD on 30 acres of petitioners' property on which a 203,091 square-foot Wal-Mart Supercenter would be constructed. At a public meeting, on August 1, 2006, the Town Board declined to forward Wal-Mart's application to the Town Planning Board for review and recommendation on the grounds that the proposed structure was not consistent with the Town's comprehensive plan and not in the public interest. Wal-Mart did not appeal that determination.

Petitioners claim that after Wal-Mart's application for a PUDD was denied, they learned that a private meeting attended by members of the Town Board had been held on May 15, 2006, before the Town Board denied Wal-Mart's application, and that the proposed construction of a Wal-Mart store on petitioners' property was discussed. Claiming that this meeting violated the open meetings provisions of the Public Officers Law, petitioners, by order to show cause dated September 15, 2006, sought permission prior to commencing any action (see CPLR 3102 [c]) to depose each member of the Town Board as to his or her attendance at this meeting and his or her recollection as to what transpired and what had been discussed. By decision and order dated October 2, 2006, Supreme Court (Williams, J.) denied this motion, expressly finding—based upon submissions received in connection with the motion—that the meeting was in fact a "political caucus" and, as such, not a violation of the Public Officers Law. Petitioners did not appeal that determination.

On October 10, 2006, petitioners commenced the instant (their second) combined proceeding pursuant to CPLR article 78 and action for a declaratory judgment against the Town Board, naming Wal-Mart as a necessary party. In its petition, petitioners sought to vacate and annul the Town Board's adoption of Local Law No. 5 as well as its denial of Wal-Mart's application for the establishment of a PUDD on petitioners' property. Petitioners also sought a declaration that the meeting alleged to have been held on May 15, 2006 and attended by members of the Town Board constituted a violation of the Public Officers Law, and that any actions subsequently taken by the

Town Board that involved any matters discussed at that meeting be vacated and annulled. The Town Board moved to dismiss the petition and complaint pursuant to CPLR 7804 (f), 3211 and 3212 and petitioner cross-moved for discovery. Supreme Court granted the Town Board's motion to dismiss and denied petitioners' cross motion. We affirm.

Initially, we agree that petitioners do not have standing to contest the Town Board's denial of Wal-Mart's PUDD application. While petitioners own the property that was the subject of Wal-Mart's PUDD application and have a contract with Wal-Mart to allow the construction of a store assuming it successfully navigates the Town's permitting process, the fact remains that the application in question was Wal-Mart's and, as such, it is the party aggrieved by the Town Board's decision to deny the application. Simply because petitioners gave Wal-Mart permission to seek PUDD approval did not make petitioners a party to that proceeding, nor is there any evidence suggesting that they in any way participated in it. As such, they do not have standing to appeal the denial of Wal-Mart's application for a PUDD.

However, petitioners have standing not only to challenge the process used by the Town Board that led to the enactment of Local Law No. 5, but also the manner in which it employed SEQRA to revise the Town's comprehensive plan and change its zoning ordinance.[4] Where a party owns property that falls within an area affected by the regulation in question, it is presumed to have been adversely affected by the change in the zoning law and have standing to contest it (see *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 414 [1987]; *Matter of Schulz v Lake George Park Commn.*, 180 AD2d 852, 855 [1992]). As petitioners are owners of property that is located within one of the zoning districts to which the new zoning law applies and, as a result, the zoning scheme for their property has been changed, they "would suffer direct harm, injury that is in some way different from that of the public at large" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 774 [1991]; *see Matter of Piela v Van Voris*, 229 AD2d 94, 95 [1997]). Moreover, petitioners have standing to challenge the SEQRA process as they have a specific noneconomic environmental injury that falls within the zone of interest sought to be protected by that statute (*see Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 687 [1996]; *Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d 428, 433 [1990]).

---

4. The Town Board conceded at oral argument that petitioners had standing to contest these actions as they affect petitioners' property.

The Town Board contends that even if petitioners have standing, they should be precluded from litigating many of the issues raised in this proceeding because each was, in effect, raised by petitioners' prior challenge to the moratorium contained in Local Law No. 2, and their failure to appeal the dismissal of those matters precludes petitioners from relitigating those same issues in this proceeding.[5]

"Application of the doctrine of collateral estoppel is limited to issues that have been clearly raised and specifically decided in a prior proceeding" (*Matter of Powers v De Groodt*, 43 AD3d 509, 512 [2007] [citations omitted]; *see Matter of Ziemba v City of Troy*, 37 AD3d 68, 72 n 1 [2006], *lv denied* 8 NY3d 806 [2007]). While many of petitioners' present claims mirror those raised in prior proceedings involving these same parties, the laws that have been challenged (Local Law No. 2 and Local Law No. 5) are very different. Local Law No. 2 was essentially a temporary measure which sought to delay large scale commercial and residential development within the town while the Town Board considered whether its comprehensive plan and zoning scheme needed to be revised to address the demands that would be placed upon the community by such development. The actions of the Town Board that are being challenged in this proceeding involve the process employed in its SEQRA review that led to permanent revisions in the Town's comprehensive plan and its zoning ordinance. While petitioners once again claim that the Town Board is using its legislative authority as a pretext to prevent the construction of a Wal-Mart store within the town, the local laws that have been challenged in these proceedings are by their terms very different and have had a very different impact upon petitioners' property. One imposed a moratorium of limited duration on the construction of large commercial and residential projects while the other enacted substantial changes to the Town's zoning ordinance and, in effect, worked a marked change in the zoning as it affected petitioners' property. Therefore, while the claims being made by petitioners are in many ways the same as those they made in prior proceedings, these claims target very different legal pronouncements and, as such, petitioners are not estopped from making them in this proceeding (*cf. Korbel v Zoning Bd. of Appeals of Town of Horicon*, 28 AD3d 888 [2006]).

While petitioners have standing and are not necessarily precluded from making claims they have made in prior proceedings, they have the burden of establishing by competent evi-

---

**5.** In fact, the petition as submitted in both matters contains identical language in the first 31 allegations contained in petitioners' complaint.

dence that the Town Board's decision to revise its comprehensive plan and change its zoning ordinance as it affects petitioners' property was arbitrary and unreasonable (*see e.g. Matter of Baumgarten v Town Bd. of Town of Northampton*, 35 AD3d 1081 [2006]; *Matter of Boyles v Town Bd. of Town of Bethlehem*, 278 AD2d 688, 690 [2000]; *Matter of Save Our Forest Action Coalition v City of Kingston*, 246 AD2d 217, 221 [1998]). We cannot conclude that Local Law No. 5 is anything "other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community" (*Matter of Boyles v Town Bd. of Town of Bethlehem*, 278 AD3d at 690 [internal quotation marks and citation omitted]). To satisfy the statutory requirement that zoning legislation be in accord with a comprehensive plan, respondents need only show that the zoning amendment was adopted for "a legitimate governmental purpose" and is unreasonable if "arbitrary, that is, if there is no reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end" (*Fred F. French Inv. Co. v City of New York*, 39 NY2d 587, 596 [1976]; *see Interlaken Homeowners' Assn. v City of Saratoga Springs*, 267 AD2d 842, 845 [1999]).

Here, petitioners, by their affidavits, contend that the SEQRA process employed by the Town Board was flawed in that it failed to conduct a public scoping session to be included in the generic environmental impact statement, it relied upon the revised comprehensive plan for many of the conclusions contained in the generic environmental impact statement, the methodology used to collect data for the survey conducted as part of the SEQRA process was unreliable, the survey was biased in its approach, and the revisions to the comprehensive plan and the amendment to the zoning ordinance were simply a pretext used by the Town Board to prevent the construction of a Wal-Mart Supercenter on property located within the town. In response, the Town Board submitted an expert affidavit that presented specific facts to support the conclusion that the process employed by the Town Board complied with SEQRA and that "[t]he planning and environmental review conducted in connection with the [c]omprehensive [p]lan, [f]indings and consequent zoning changes were made with extraordinary care and thoroughness, and represent a balancing of interests by the Town of Ballston." Petitioners failed to submit any evidence in admissible form that took issue with the opinions rendered by the Town Board's expert in his affidavit or any of the factual assertions that were made therein to support those conclusions. Petitioners' proof is simply insufficient to overcome the "strong presumption of validity" attached to the Town Board's adoption

of Local Law No. 5 (*Matter of McGrath v Town Bd. of Town of N. Greenbush*, 254 AD2d 614, 617 [1998], *lv denied* 93 NY2d 803 [1999]; *see Matter of Save Our Forest Action Coalition v City of Kingston*, 246 AD2d at 221), and does not contain any evidence that would create an issue of fact as to any of the claims made in the petition.

Finally, petitioners claim that members of the Town Board conducted a secret meeting on May 15, 2006 during which discussions were had as to Wal-Mart's application to build a supercenter on petitioners' property as well as proposals to change the Town's comprehensive plan and its zoning ordinance. This claim is identical to the claims made by petitioners in their September 14, 2006 motion for preaction disclosure in which they sought judicial permission to depose each member of the Town Board regarding what transpired at this meeting, as well as for an order enjoining the destruction or deletion of any documents that may have been created as a result of it. Petitioners did not appeal the denial of this motion (*see* CPLR 3102 [c]; *Matter of Byramain v Stevenson*, 278 AD2d 619 [2000]; *Matter of Labarbera v Ulster County Socy. for Prevention of Cruelty to Animals*, 277 AD2d 672 [2000]), and offer no new evidence that was not presented in that time that might provide a basis for reconsidering it. As a result, they are bound by Supreme Court's prior decision denying the motion for preaction discovery.

Accordingly, Supreme Court properly granted the Town Board's motion and dismissed the petition and complaint.

Mercure, J.P., Spain, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.