[893 NYS2d 652]

In the Matter of National Fuel Gas Distribution Corporation, Petitioner, v Public Service Commission of the State of New York, Respondent.

Third Department, December 31, 2009

### APPEARANCES OF COUNSEL

*Michael W. Reville*, Williamsville (*Neil L. Levine* of *Whiteman, Osterman & Hanna, L.L.P.*, Albany, and *Bruce V. Miller* of *Saul Ewing, L.L.P.*, Newark, New Jersey, of counsel), for petitioner.

*Peter McGowan, New York State Public Service Commission*, Albany (*Jonathan D. Feinberg* of counsel), for respondent.

### OPINION OF THE COURT

Rose, J.P.

Petitioner, a "gas corporation" as defined in Public Service Law § 2 (11), filed a proposal with respondent seeking to increase its rates for the 2008 rate year and to pass on to its ratepayers certain costs of site investigation and remediation (hereinafter SIR). Following evidentiary hearings and a review of the Administrative Law Judge's recommendations, respondent issued a rate order that imposed an incentive plan, determined a 9.1% rate of return on equity, lowered the recom-

mended rate increase accordingly and decreased the recommended amount of SIR costs that petitioner could recover. Petitioner then commenced this CPLR article 78 proceeding to review each of these aspects of respondent's determination.

■ Initially, petitioner argues that respondent effectively imposed an unauthorized penalty because the incentive plan requires it to meet certain safety and customer service standards or face a future reduction in its 2008 rates. Petitioner will suffer no such injury, however, unless respondent holds a show cause hearing, finds that petitioner is not in compliance with the plan and, as a result, reduces petitioner's rates. Inasmuch as the harm anticipated by petitioner may never occur, the controversy is not ripe for judicial review (*see Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510, 519-520 [1986], *cert denied* 479 US 985 [1986]; *Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233, 240 [1984]; *Matter of Jamaica Water Supply Co. v Public Serv. Commn. of State of N.Y.*, 152 AD2d 17, 19-21 [1989]).

■ Petitioner's challenge to the rate increase itself centers upon respondent's decision to compute the rate of return on petitioner's equity by giving twice as much weight to the discounted cash flow method (hereinafter DCFM) as it gave to the capital asset pricing model (hereinafter CAPM). Petitioner contends that, due to deficiencies in the DCFM and the greater accuracy of the CAPM under the facts present here, respondent's weighting lacks a rational basis. We cannot agree. Due to the highly technical nature of utility rate making and respondent's particular expertise, respondent has "broad discretion to review and determine the reasonableness of any rates or charges sought to be imposed by [public utilities]" (*Matter of Crescent Estates Water Co. v Public Serv. Commn. of State of N.Y.*, 77 NY2d 611, 616 [1991]; *see* Public Service Law § 65). As a result, its determinations " 'may not be set aside unless they are without rational basis or without reasonable support in the record' " (*Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.*, 95 NY2d 40, 48 [2000], quoting *Matter of Rochester Tel. Corp. v Public Serv. Commn. of State of N.Y.*, 87 NY2d 17, 29 [1995]). In addition, respondent " 'is free to entertain or ignore any particular factor, or to assign whatever weight it deems appropriate' " (*Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.*, 95 NY2d at 49, quoting *Matter of Abrams v Public Serv. Commn. of State of N.Y.*, 67 NY2d 205, 212 [1986]).

Here, respondent credited the expert opinions presented by the staff of the Department of Public Service (hereinafter DPS) and chose to apply the two-thirds/one-third weighting recommended in a 1994 generic financing recommended decision (hereinafter GFRD). In their testimony and briefs, DPS staff asserted that DCFM and CAPM had opposing biases, and that the traditional weighting was appropriate because equal weighting of CAPM would result in an inflated rate of return. While petitioner presented evidence that questioned the continuing accuracy of the two-thirds/one-third weighting, respondent was free to discount that testimony. Also, despite petitioner's contention that respondent applied the GFRD weighting method as an unpromulgated rule, the record shows that respondent utilized it here as a past practice or policy and not as "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances" (*Matter of Senior Care Servs., Inc. v New York State Dept. of Health*, 46 AD3d 962, 964 [2007] [internal quotation marks and citations omitted]). Further, when respondent's computation of a rate of return falls within the range of expert testimony, it has record support, and we will treat respondent's resolution of the differences among the experts as within its own expertise and outside the scope of our limited review (*see Matter of Consolidated Edison Co. of N.Y. v Public Serv. Commn. of State of N.Y.*, 74 AD2d 384, 387 [1980], *lv denied* 51 NY2d 705 [1980]; *Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.*, 64 AD2d 232, 240-241 [1978], *lv denied* 46 NY2d 710 [1979]).

■ We are, however, persuaded by petitioner's argument that respondent improperly reduced the amount of SIR costs that it could pass on to its customers by determining that its parent company, National Fuel Gas Company (hereinafter NFGC), should have allocated to petitioner a greater share of certain insurance settlement proceeds. In 1999, NFGC reached a global settlement with its insurers that yielded funds to be applied against the existing and potential SIR expenses incurred by all of its subsidiaries. NFGC allocated the settlement proceeds among its subsidiaries based upon the premiums each had paid for environmental risk insurance for their sites and their contributions to the costs associated with obtaining the settlement. On that basis, petitioner received 46% of the proceeds. In the testimony and disclosure provided to respondent, petitioner asserted that this premiums-based allocation method, rather than a claims-based method, was chosen because NFGC had

only preliminary estimates of the potential claims contained in a 1996 environmental report (hereinafter the IES report), not all sites were included in the estimates and it would have been speculation to say which subsidiary would have the greatest share of actual SIR expenses. Respondent, however, found that a claims-based allocation method would be more beneficial for New York ratepayers and concluded that NFGC's premiums-based method was unreasonable. Respondent deemed petitioner to have received a 64% share of the settlement based upon its percentage of potential claims stated in the IES report and reduced the amount of recoverable SIR costs accordingly.

In determining whether a utility may recover certain costs, respondent's rate-setting powers necessarily include assessment of "the prudence of a utility's actions as those actions impact upon the ratepayers" (*Matter of Crescent Estates Water Co. v Public Serv. Commn. of State of N.Y.*, 77 NY2d at 617; *see Matter of Abrams v Public Serv. Commn. of State of N.Y.*, 67 NY2d at 216-217). "Prudence . . . is determined by judging whether the utility acted reasonably, under the circumstances at the time, considering that the company had to solve its problems prospectively rather than in reliance on hindsight" (*Matter of Long Is. Light Co. v Public Serv. Commn. of State of N.Y.*, 134 AD2d 135, 143-144 [1987] [internal quotation marks and citation omitted]).

Given what NFGC knew in 1999 and its obligations to its subsidiaries inside and outside New York, the record does not establish that its premiums-based method was unreasonable. The evidence is undisputed that the IES report upon which respondent based its determination contained only preliminary estimates of SIR costs which did not include all potential claims or sites. The relevant testimony also established that the IES report was prepared solely for the purpose of maximizing the total settlement amount and was not useful for assessing actual, individual claims. Thus, NFGC could reasonably decide that it would be too speculative and likely unfair to some subsidiaries to use the IES report to predict the ultimate number and costs of actual claims. Further, it is significant that the record contains no evidence that the IES report accurately reflected existing claims either when it was drafted in 1996 or three years later when the settlement was reached and NFGC had to allocate the proceeds. By contrast, each subsidiary's share of the premiums paid to secure the insurance that contributed to the settlement could be accurately computed. Given that the rate-

payers of each subsidiary effectively paid differing premiums to obtain insurance that varied depending on the number of sites and extent of coverage, an allocation based upon premiums achieved the goal of assuring that each subsidiary and its rate-payers would receive the benefit of the settlement in proportion to what they had paid. Accordingly, while we agree that an allocation based upon the potential claims summarized in the IES report would have been reasonable and perhaps the best outcome for petitioner's ratepayers, we cannot agree that the record supports respondent's conclusion that the alternate, premiums-based method was unreasonable from NFGC's broader perspective in 1999.

LAHTINEN, MALONE JR. and GARRY, JJ., concur.

Adjudged that the determination is modified, without costs, by annulling so much thereof as imputed additional settlement proceeds to petitioner; petition granted to that extent and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.