In the Matter of NEW YORK BLUE LINE COUNCIL, INC., et al., Appellants-Respondents, v ADIRONDACK PARK AGENCY, Respondent-Appellant. (Proceeding No. 1.) In the Matter of CLINTON COUNTY et al., Appellants-Respondents, v ADIRONDACK PARK AGENCY et al., Respondents-Appellants. (Proceeding No. 2.) [927 NYS2d 432]—

Mercure, J.P.

Respondent Adirondack Park Agency (hereinafter APA) is charged with regulating land use and development within the Adirondack Park and, in connection with that function, is empowered "[t]o adopt, amend and repeal . . . such rules and regulations, consistent with" the Adirondack Park Agency Act (hereinafter Act), "as it deems necessary to administer" the Act (Executive Law § 804 [9]). In 1994, a task force created at the request of then-Governor Mario Cuomo recommended a major revision of the APA's regulations. Since that time, the APA has engaged in a series of rulemakings, most recently in 2008, when it adopted nine regulatory amendments. Shortly thereafter, petitioners[1] commenced these two hybrid CPLR article 78 proceedings and declaratory judgment actions challenging four of the 2008 amendments—those affecting (1) the expansion of preexisting, nonconforming shoreline structures, (2) subdivisions involving wetlands, (3) parcels divided by roads, and (4) hunting and fishing cabins.

Briefly described, the first challenged regulation now requires a variance for any expansion of preexisting structures that do not comply with shoreline set-back requirements (*see* 9 NYCRR 575.5 [b] [2]); the prior regulation permitted unlimited lateral and rearward expansion, as long as the expansion did not bring such structures closer to the shoreline (*see* 9 NYCRR former 575.5 [b] [2]; *Brown v Glennon*, 203 AD2d 846, 849 [1994]). With regard to wetlands, the APA's regulations formerly provided that the subdivision of a parcel containing wetlands was not subject to review if the wetland was located entirely on a parcel retained by the owner (*see* 9 NYCRR former 573.3 [b]); the new amendment provides for APA review of any proposed lot containing a wetland or adjoining a lot containing a wetland unless the boundary is 200 feet from the wetland (*see* 9 NYCRR 578.3 [n] [3]). Petitioners also challenged the APA's repeal of a regulation that excepted property traversed by a roadway from the general rule that adjoining lots under single ownership are treated as one lot and, thus, considered to be subdivided when either lot is sold (*see* Executive Law § 811 [1] [a]; 9 NYCRR former 573.4 [b]). Finally, petitioners challenged the APA's revised

---

**1.** Petitioners in proceeding No. 1 consist of two not-for-profit corporations, a timber producer, a construction company and two individuals who own property within the Adirondack Park (hereinafter the Blue Line petitioners). Petitioners in proceeding No. 2 are counties and towns located in the Adirondack Park (hereinafter the municipal petitioners).

definition of "hunting and fishing cabins," which now sets forth five specific, structural criteria that must be met, along with the requirement that the structure be used only "occasional[ly]" and "primarily for hunting, fishing, and similar purposes" (9 NYCRR 570.3 [m]).

Supreme Court determined that the municipal petitioners lacked capacity to sue on all claims except that related to the alleged violation of their home rule powers and, as to that issue, their arguments lacked merit. With respect to the substantive arguments of the Blue Line petitioners, the court upheld the APA's regulatory amendments relating to the expansion of shoreline structures and jurisdiction over subdivisions involving wetlands. The court struck down the amendment concerning hunting and fishing cabins, and declared that the repeal of the regulation regarding parcels divided by roads did not eliminate a so-called "natural subdivision rule." The parties cross-appeal, and we now hold that both petitions should be dismissed in their entirety.

Initially, we agree with Supreme Court that the municipal petitioners lack capacity to sue on all claims other than that alleging a violation of their home rule powers. "[C]apacity concerns a litigant's power to appear and bring its grievance before the court" (*Matter of Graziano v County of Albany*, 3 NY3d 475, 478-479 [2004] [internal quotation marks and citation omitted]).[2] As relevant here, it is well settled that "municipal corporate bodies, as subdivisions of the state, cannot contest the actions of the state which affect them in their governmental capacity or as representatives of their inhabitants" (*Matter of County of Oswego v Travis*, 16 AD3d 733, 735 [2005]; *accord Matter of Bethpage Water Dist. v Daines*, 67 AD3d 1088, 1090 [2009], *lv denied* 14 NY3d 707 [2010]; *see City of New York v State of New York*, 86 NY2d 286, 290-292 [1995]). Contrary to the municipal petitioners' argument, this rule applies with equal force to the actions of state agencies: "a municipality lacks the capacity to challenge a state agency's interpretation of statutes and regulations where . . . the result impacts the municipality in its governmental capacity" (*Matter of Bethpage Water Dist. v Daines*, 67 AD3d at 1091; *see City of Utica v Daines*, 53 AD3d 922, 923-924 [2008]; *Matter of County of Seneca v Eristoff*, 49

---

2. The issue of capacity is conceptually distinct from standing, which requires a showing of injury-in-fact within the zone of interests promoted by the statute pursuant to which an agency has acted (*see Matter of Graziano v County of Albany*, 3 NY3d at 478-479). To the extent that the municipal petitioners argue that their claims fall within the zone of interests promoted by the Act, their arguments are relevant to standing, but not capacity.

AD3d 950, 950-951 [2008]; *Matter of County of Oswego v Travis*, 16 AD3d at 735).

Here, the municipal petitioners assert that the challenged amendments affect them in their governmental capacity. Indeed, they maintain that the amendments "directly steal . . . their legislative capacity for enacting land use controls." Thus, they must demonstrate the applicability of one of the recognized exceptions to the general rule regarding lack of capacity (*see City of New York v State of New York*, 86 NY2d at 291-292).[3]

To that end, the municipal petitioners argue that they have express statutory authorization to sue under Executive Law § 818 (1), which provides that "[a]ny act" of the APA may be challenged in a CPLR article 78 proceeding by "any aggrieved person." This provision, however, merely authorizes proceedings against the APA and, thus, is not dispositive on the question of the municipal petitioners' capacity to sue. That is, as Supreme Court concluded, there is no indication that section 818 (1) was intended to trump the requirement that an aggrieved party must otherwise have the capacity to sue (*see Matter of Adirondack Park Local Govt. Review Bd. v Adirondack Park Agency*, 89 AD2d 642 [1982]). Nor does Executive Law § 818 (2) provide authorization to commence this proceeding, as the municipal petitioners urge. That provision confers "standing" upon "[a]ny local government which appears as a party in any proceeding before the agency" to challenge the APA's decision on "such project" (Executive Law § 818 [2]), with "project" separately defined as "any new land use and development or subdivision of land" (Executive Law § 802 [52]). The definition of "project" does not, on its face, encompass the substantive challenges to the APA's rule-making raised here.

While the municipal petitioners do have capacity to raise their claims insofar as they argue that the 2008 amendments violated the home rule protections contained in article IX of the NY Constitution (*see Town of Black Brook v State of New York*, 41 NY2d 486, 488-489 [1977]; *see also City of New York v State of New York*, 86 NY2d at 292), their arguments lack merit. It is well settled that the Act, "addressed to an issue of substantial

---

3. The four exceptions to the general rule are "(1) an express statutory authorization to bring such a suit; (2) where the State legislation adversely affects a municipality's proprietary interest in a specific fund of moneys; (3) where the State statute impinges upon 'Home Rule' powers of a municipality constitutionally guaranteed under article IX of the State Constitution; and (4) where the municipal challengers assert that if they are obliged to comply with the State statute they will by that very compliance be forced to violate a constitutional proscription" (*City of New York v State of New York*, 86 NY2d at 291-292 [internal quotation marks and citations omitted]).

[s]tate concern, relates to" a matter reserved to the state, i.e., a subject " 'other than the property, affairs or government of a local government' " and, thus, does not impermissibly infringe upon the home rule powers of municipalities within the Park (*Wambat Realty Corp. v State of New York*, 41 NY2d 490, 495-496 [1977], quoting NY Const, art IX, § 3 [a] [3]). Like the statute itself, the regulatory amendments at issue comprise a portion of the "comprehensive zoning and planning program for all of the public and private lands within the [P]ark," a matter of state concern (*id.* at 492). As such, Supreme Court properly rejected the municipal petitioners' assertion that the amendments violate their home rule powers.

With respect to the Blue Line petitioners, we agree with the APA that their claims are not justiciable inasmuch as they are not ripe for review and, thus, their petition must be dismissed in its entirety.[4] In "determining whether a preenforcement challenge to an administrative regulation is ripe for judicial review," we must first consider "whether the administrative action being reviewed is final and whether the controversy may be determined as a 'purely legal' question" (*Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510, 519 [1986], *cert denied* 479 US 985 [1986]). Then, we must evaluate whether the anticipated harm "is sufficiently direct and immediate," as opposed to merely "insignificant, remote or contingent" (*id.* at 520 [internal quotation marks and citation omitted]). A challenge to a regulation "cannot be ripe if the claimed harm may be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" (*id.*; *accord Matter of Gordon v Rush*, 100 NY2d 236, 242 [2003]; *Matter of Essex County v Zagata*, 91 NY2d 447, 453 [1998]). Moreover, the fact that the Blue Line petitioners possess a "sufficient interest in the [matter] to be accorded standing to maintain the [proceeding] is but part of the equation"; the proceeding is nevertheless "premature and as a matter of law may not be maintained if the issue presented for adjudication involves a future event beyond control of the parties which may never occur" (*American Ins. Assn. v Chu*, 64 NY2d 379, 385 [1985], *appeal dismissed and cert denied* 474 US 803 [1985]; *see Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233, 240 [1984]).

---

4. "[R]ipeness and justiciability are matters pertaining to subject matter jurisdiction which can be raised at any time" (*333 Cherry LLC v Northern Resorts, Inc.*, 66 AD3d 1176, 1178 n 3 [2009]; *see Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233, 241 n 3 [1984]).

Here, as respondents note, the injuries asserted by the Blue Line petitioners involve the possibility of either indirect economic harm or that future variance and subdivision approval applications may be denied. First, none of the Blue Line petitioners alleges any injury resulting from the wetlands amendment. As to the expansion of shoreline structures, one of the corporate petitioners—a construction company that derives income from construction within shoreline areas—alleges that it will be detrimentally impacted by waning construction activities if the APA denies future variance applications or landowners have the perception that variances are difficult to obtain. Another corporate petitioner—a timber producer—and the individual petitioners own preexisting, nonconforming shoreline structures. These petitioners and one not-for-profit corporation also own structures, or land upon which third-party tenants build structures, that may now be classified as "single family residences" instead of "hunting and fishing cabins" under the amendments and, therefore, would be subject to stricter regulations. Finally, one of the individual petitioners owns two lots separated by a roadway. The Blue Line petitioners allege that they must now seek variances or approval from the APA if they wish to subdivide or expand their cabins and nonconforming shoreline structures, and that potential tenants may find their property less desirable to lease due to more onerous regulation.

In our view, none of these allegations constitutes concrete injuries sufficient to state a justiciable claim. As this Court has held, "[t]he mere fact that petitioners may have to endure the APA review process is not sufficient, without more, to constitute injury for this purpose" (*Matter of Wal-Mart Stores v Campbell*, 238 AD2d 831, 832-833 [1997]; *see Matter of Essex County v Zagata*, 91 NY2d at 455-456; *Matter of Hunt Bros. v Glennon*, 81 NY2d 906, 910 [1993]; *Weingarten v Town of Lewisboro*, 77 NY2d 926, 928 [1991]). Inasmuch as the harm anticipated by the Blue Line petitioners may be prevented by further administrative action—i.e., the APA may grant any future variance or subdivision applications—the alleged injuries are merely hypothetical at this time. In any event, none of the Blue Line petitioners has claimed that they are seeking to subdivide their land, build new structures, or expand their cabins and nonconforming structures; indeed, they do not even allege that they plan to do so. Moreover, the assertions that potential tenants or customers of the construction company may become discouraged by the variance and permit requirements involve "future event[s] beyond control of the parties which may never occur" (*American Ins. Assn. v Chu*, 64 NY2d at 385; *see Hussein v State of New York*, 81 AD3d 132, 135-136 [2011]).

In short, "the harm sought to be enjoined is contingent upon events which may not come to pass" and, thus, "the claim[s] . . . [are] nonjusticiable as wholly speculative and abstract" (*Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d at 240; *see Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of State of N.Y.*, 71 AD3d 62, 64 [2009], *affd* 16 NY3d 360 [2011]). As such, the Blue Line petition (proceeding No. 1) must be dismissed in its entirety, and Supreme Court's declarations regarding the repeal of 9 NYCRR former 573.4 (b) and the validity of 9 NYCRR 570.3 (m), as amended, must be stricken (*see American Ins. Assn. v Chu*, 64 NY2d at 386). Petitioners' remaining arguments are rendered academic by our determination.

Rose, Kavanagh and Garry, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by striking the declarations and dismissing both petitions in their entirety, and, as so modified, affirmed.