OPINION OF THE COURT
George B. Ceresia, Jr., J.
The Division of Fish, Wildlife and Marine Resources (the Division) of the New York State Department of Environmental Conservation (DEC) is responsible for implementing and enforcing New York State’s Endangered Species Act (see ECL 11-0535). Effective November 3, 2010, at the request of the Division, DEC adopted amendments to part 182 of the Rules of the Department of Environmental Conservation with regard to the protection of endangered or threatened species (see 6 NYCRR part 182 [hereinafter part 182]). Prior to enactment of the amendments, DEC possessed the ability to enforce laws and regulations prohibiting the intentional taking of threatened or endangered wildlife (the outright killing or capturing of such animals). It also possessed the power to review the impact of proposed property development upon such species, where the DEC was an involved agency,[1] as a part of the review process under the State Environmental Quality Review Act (SEQRA) (see 6 NYCRR part 617). It did not, however, possess a formal permitting mechanism to regulate consequential effects of land use, where such use could potentially have a detrimental impact on an endangered or threatened species. The amendments, inter alia, require *741 a party to obtain a DEC permit, for what is described as an “incidental take,”[2] where actions involving the use of land would have an adverse effect upon an endangered or threatened wildlife species (see 6 NYCRR 182.2 Q], [k]). Among the many concerns of the petitioners/plaintiffs (hereinafter petitioners), an incidental take permit may not be issued unless DEC determines that mitigation measures to protect an endangered or threatened species would result in a “net conservation benefit”[3] to the species (see 6 NYCRR 182.12 [a] [3]).
“ ‘Take’ or ‘Taking’ means the pursuing, shooting, hunting, killing, capturing, trapping, snaring and netting of any species listed as endangered or threatened in this Part, and all lesser acts such as disturbing, harrying or worrying.” (6 NYCRR 182.2 [x].)
“ ‘Lesser Acts’ means, for the purposes of this Part, harassing, harming, maiming, wounding or collecting any species listed as endangered or threatened in section 182.5 of this Part, any act which is likely to cause the death of or injury to any individual member(s) of a species listed as endangered or threatened in section 182.5 of this Part, any adverse modification of habitat of any species listed as endangered or threatened in section 182.5 of this Part, and any interference with or impairment of an essential behavior of a species listed as endangered or threatened in section 182.5 of this Part.” (6 NYCRR 182.2 [Z].)
“ ‘Adverse modification of habitat’ means any alteration of the occupied habitat of any species listed as endangered or threatened in this Part that, as determined by the department, is likely to negatively affect one or more essential behaviors of such species.” (See 6 NYCRR 182.2 [b].)
“ ‘Occupied habitat’ means a geographic area in New York within which a species listed as endangered or threatened in this Part has been determined by the department to exhibit one or more essential behaviors. Once identified as occupied habitat, the Department will continue to consider that area as occupied habitat until the area is no longer suitable habitat for that species or monitoring has indicated that reoccupation by that species is unlikely.” (See 6 NYCRR 182.2 [o].)
“ ‘Essential Behavior’ means any of the behaviors exhibited by a species listed as endangered or threatened in this Part that are a part of its normal or traditional life cycle and that are essential to its survival and perpetuation. Essential behavior includes behaviors associated with breeding, hibernation, reproduction, feeding, sheltering, migration and overwintering.” (6 NYCRR 182.2 [f].)
*742 The Association for a Better Long Island, Inc., Jan Burman and M-GBC, LLC (hereinafter collectively referred to as ABLI petitioners) and the Town of Riverhead and the Town of River-head Community Development Agency (hereinafter collectively referred to as Riverhead petitioners) have commenced the above-captioned combined action/special proceeding seeking review of the amendments to part 182.* [4] The petitions allege various improprieties in connection with the adoption of part 182. Chief among them, that DEC, in its adoption of the revisions to part 182, failed to obtain approval of the State Environmental Board, and failed to hold a public hearing, as required under ECL 3-0301 (2) (a). They allege that the adoption of part 182 was ultra vires from the standpoint it went beyond the power delegated to DEC by the state legislature. They allege that DEC violated the State Administrative Procedure Act; that DEC violated SEQRA by failing to take a “hard look” at the environmental impacts associated with the adoption of part 182; that the enactment of part 182 constitutes an improper delegation of a governmental function (the regulation of threatened and endangered species) to individual property owners; and that the adoption of part 182 constitutes a violation of petitioners’ rights to substantive due process.
The respondents/defendants (hereinafter respondents) have made a motion to dismiss the petitions/complaints (hereinafter petitions) on grounds that the petitioners do not have the requisite standing to challenge part 182, and that the issues raised are not justiciable, by reason that they are not ripe for review. The respondents allege that the petitioners have not suffered any actual, concrete injury, as they have not yet applied for a permit under part 182; and that they have not made a request under section 182.9 for a determination with regard to whether a proposed activity is subject to DEC regulation (see 6 *743 NYCRR 182.9). They maintain that the application of part 182 to the petitioners is purely speculative since, depending upon the activity which is undertaken and/or proposed, and the species effected, no regulation may be necessary. They argue “at this point all that exists is the mere possibility that DEC may have jurisdiction over an as of yet unknown activity.” By reason of the foregoing, the respondents maintain that the issues are unripe and premature.
The determination of whether a matter is ripe for judicial review involves application of a two-part analysis: “first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied” (see Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 519 [1986], cert denied 479 US 985 [1986] [citation omitted]). “The appropriateness inquiry looks to whether the administrative action being reviewed is final and whether the controversy may be determined as a purely legal question” (id. [internal quotation marks omitted]). As the Court of Appeals stated in the Church of St. Paul & St. Andrew case:
“The second part of the inquiry requires an evaluation of ‘the hardship to the parties of withholding [or granting] court consideration’ (Abbott Labs, v Gardner, [387 US 136 (1967)], supra, at p 149). The effect on the administrative agency and its program and the need for judicial economy should be taken into account as well as the degree of hardship to the challenging party (4 Davis, op. cit. § 25:6, at 369). Essentially, this inquiry, from the standpoint of the challenging party, entails an examination of the certainty and effect of the harm claimed to be caused by the administrative action: whether it is ‘sufficiently direct and immediate’ (Abbott Labs, v Gardner, supra, at p 152) and whether the action’s ‘effects [have been] felt in a concrete way’ (id., at p 148). If the anticipated harm is insignificant, remote or contingent (see Matter of New York State Inspection, Sec. & Law Enforcement Employees v Cuomo, 64 NY2d, at p 240, supra) the controversy is not ripe.
“A fortiori, the controversy cannot be ripe if the claimed harm may be prevented or significantly ameliorated by further administrative action or by *744 steps available to the complaining party.” (67 NY2d at 520.)
The recent case of Matter of New York Blue Line Council, Inc. v Adirondack Park Agency (86 AD3d 756 [3d Dept 2011]) has close parallels to the case at bar. As relevant here, in New York Blue Line Council, the Court found that petitioner’s challenge to nine regulatory amendments adopted by the Adirondack Park Agency[5] was not justiciable. The Court observed that the injuries asserted by the petitioners “involve the possibility of either indirect economic harm or that future variance and subdivision approval applications may be denied” (id. at 761). The Court concluded:
“In our view, none of these allegations constitutes concrete injuries sufficient to state a justiciable claim. As this Court has held, ‘[t]he mere fact that petitioners may have to endure the [Adirondack Park Agency] review process is not sufficient, without more, to constitute injury for this purpose’ (Matter of Wal-Mart Stores v Campbell, 238 AD2d 831, 832-833 [1997]; see Matter of Essex County v Zagata, 91 NY2d at 455-456; Matter of Hunt Bros. v Glennon, 81 NY2d 906, 910 [1993]; Weingarten v Town of Lewisboro, 77 NY2d 926, 928 [1991]). Inasmuch as the harm anticipated by the Blue Line petitioners may be prevented by further administrative action — i.e., the [Adirondack Park Agency] may grant any future variance or subdivision applications — the alleged injuries are merely hypothetical at this time. In any event, none of the Blue Line petitioners has claimed that they are seeking to subdivide their land, build new structures, or expand their cabins and nonconforming structures; indeed, they do not even allege that they plan to do so. Moreover, the assertions that potential tenants or customers of the construction company may become discouraged by the variance and permit requirements involve ‘future event[s] beyond control of the parties which may never occur’ (American Ins. Assn. v Chu, 64 NY2d at 385; see Hussein v State of New York, 81 AD3d 132, 135-136 [2011]).
*745 “In short, ‘the harm sought to be enjoined is contingent upon events which may not come to pass’ and, thus, ‘the claim[s] . . . [are] nonjusticiable as wholly speculative and abstract’ (Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d at 240; see Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of State ofN.Y., 71 AD3d 62, 64 [2009], affd 16 NY3d 360 [2011]).” (Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, 86 AD3d at 761-762.)
The Court has also considered the case of Matter of Town of Riverhead v Central Pine Barrens Joint Planning & Policy Commn. (71 AD3d 679 [2d Dept 2010]), which appears to involve the same property owned by the Town of Riverhead at issue here (Enterprise Park At Calverton [EPCAL]). There, the Central Pine Barrens Joint Planning and Policy Commission (Commission) adopted resolutions asserting jurisdiction over review of the development of EPCAL. The Appellate Division found that the matter was not ripe for review since the Commission had taken no action whatsoever with respect to petitioner’s property, and the petitioners had not incurred any actual, concrete injury (see id.).
The only alleged landowners among the petitioners here are M-GBC, LLC, the Town of Riverhead and the Town of River-head Community Development Agency. DEC has not taken any action under part 182 with respect to the petitioners. None of the petitioning landowners has shown that they are currently engaged in an activity regulated under part 182. While the Town of Riverhead intends to develop EPCAL in the future, and has submitted an application to subdivide the parcel into several large tracts in anticipation of future development, the Town has not identified a specific proposed land use regulated by part 182.[6] The fact that the petitioners may be required, in the future, to undergo the DEC part 182 review process is insufficient to constitute an actual or concrete injury (see Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, supra; Matter of Town of Riverhead v Central Pine Barrens Joint Planning & Policy Commn., supra). Moreover, “the claimed harm may be prevented or significantly ameliorated by *746 further administrative action or by steps available to the complaining parties” (Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, 86 AD3d at 760).
Under all of the circumstances, the court finds that the issues presented in each of the hybrid actions/proceedings are not ripe and/or justiciable.
Turning to the issue of standing, the court notes that this is a threshold issue and a litigant must establish standing in order to seek judicial review (see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]). Standing involves a two-part test:
“First, a plaintiff must show ‘injury in fact,’ meaning that plaintiff will actually be harmed by the challenged administrative action. As the term itself implies, the injury must be more than conjectural. Second, the injury a plaintiff asserts must fall within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted” (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004], citing Society of Plastics Indus. v County of Suffolk, supra, and Matter of Colella v Board of Assessors of County of Nassau, 95 NY2d 401, 409-410 [2000]; Silver v Pataki, 96 NY2d 532, 539 [2001]; Matter of Graziano v County of Albany, 3 NY3d 477, 479 [2004]).
In order to be deemed aggrieved, the party must demonstrate “special damage,” different in kind and degree from the community generally (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987]).
The court is mindful of those cases which have held that a landowner has standing to challenge a change in zoning to the zoning district within which the property is located (see Matter of Rossi v Town Bd. of Town of Ballston, 49 AD3d 1138, 1142 [3d Dept 2008]; Tupper v City of Syracuse, 71 AD3d 1460, 1461 [4th Dept 2010]; Matter of Bloodgood v Town of Huntington, 58 AD3d 619, 621-622 [2d Dept 2009]; Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 687 [1996]; Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524, 526 [1989]). However the reasoning behind the rule is that such property owners, through the change in zoning in that particular zoning district, suffer an injury different in kind and nature than that suffered by the public at large (see Matter of Har Enter. v Town *747 of Brookhaven, supra; Matter of Rossi v Town Bd. of Town of Ballston, 49 AD3d at 1142).
Respondents M-GBC, LLC, Town of Riverhead and the Town of Riverhead Community Development Agency allege that they own real property where possible endangered or threatened species may be located. Specifically, they allege that their property is within the potential range and habitat of the tiger salamander and the short eared owl. Part 182, which has statewide application (in contrast to the limited geographic area of a municipal zoning district), does not impose any immediate and tangible change in land use. In this respect, the court is of the view that the line of cases which have held that a landowner has standing to challenge a zoning change within a zoning district has no application. For much the same reason as followed in its discussion of ripeness, the court finds that the petitioners have not demonstrated that they have suffered any actual concrete injury different in kind and nature from that experienced by the public at large. Significantly, as pointed out by the respondents, the petitioners have not applied for an incidental take permit under sections 182.10 and 182.11; and have not requested a determination under section 182.9 with regard to whether an activity is subject to regulation. Nor have they been cited or fined for an enforcement violation involving part 182. “Potential general harm does not constitute direct harm” (Matter of Brunswick Smart Growth, Inc. v Town of Brunswick, 73 AD3d 1267, 1268 [3d Dept 2010]).
With respect to the standing of Jan Burman, there is no allegation that he personally owns real property subject to part 182. However, even if his status as a managing member of M-GBC, LLC was deemed sufficient to qualify as a property owner, consistent with the foregoing, the court would find that he suffered no actual concrete injury different in kind from that suffered by the public at large.
With regard to the Association for a Better Long Island, Inc., organizational and/or associational standing involves application of a three-part test (see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 775 [1991]), petitioner must demonstrate: (1) that one or more of its members has standing to sue; (2) that the interests advanced (in the action or proceeding) are sufficiently germane to petitioner’s purposes to satisfy the court that petitioner is an appropriate representative of those interests; and (3) that the participation of the individual members is not required to assert the claim or to afford *748 petitioner complete relief (see id.; Rudder v Pataki, 93 NY2d 273, 278 [1999]; see also New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). Inasmuch as the Association for a Better Long Island, Inc. has not demonstrated that any of its other members (or itself) has suffered any such injury, the court finds that said petitioner does not have standing to sue.
Turning to the ABLI petitioners’ arguments with regard to State Finance Law § 123-b, a citizen taxpayer may challenge “a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property” without demonstrating actual or specific aggrievement (State Finance Law § 123-b [1]). In this instance, Jan Burman and M-GBC, LLC allege that they are citizen taxpayers within the meaning of State Finance Law § 123-b. Notably, it is well settled that State Finance Law § 123-b is narrowly construed (Matter of Humane Socy. of U.S. v Empire State Dev. Corp., 53 AD3d 1013, 1016 [3d Dept 2008], lv denied 12 NY3d 701 [2009]; Kennedy v Novello, 299 AD2d 605, 607 [3d Dept 2002]). In this respect, “[w]hile standing under State Finance Law § 123-b does not depend on a showing of aggrievement, the citizen taxpayer’s claim ‘must have a sufficient nexus to fiscal activities of the [s]tate’ ” (Matter of Feminists Choosing Life of N.Y., Inc. v Empire State Stem Cell Bd., 87 AD3d 47, 50 [3d Dept 2011], quoting Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813 [2003]). Moreover, “claims ‘seeking] review of a [s]tate actor’s alleged mismanagement of funds or the arbitrary and capricious distribution of funds lawfully allocated to an agency are not covered by section 123-b’ ” (Matter of Humane Socy. of U.S. v Empire State Dev. Corp., 54 AD3d at 1016, quoting Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 589 [1998] and citing Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813-814 [2003], cert denied 540 US 1017 [2003]).
As noted in Rudder v Pataki (93 NY2d 273, 281 [1999]), “[s]ince most activities can be viewed as having some relationship to expenditures, we emphasized in [Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579 (1998)] that too broad a reading of section 123-b would create standing for any citizen who had the desire to challenge virtually all governmental acts.”
Of particular relevance here, the Appellate Division in its *749 consideration of the Rudder case, made the following comment with respect to State Finance Law § 123-b: “Other than general references to improper spending by [respondents], [the petitioners have] failed to designate with any specificity either the amount of funds to be expended or the manner in which the expenditure will occur” (Rudder v Pataki, 246 AD2d 183, 186 [3d Dept 1998], affd 93 NY2d 273 [1999]).
The court has also considered Matter of Public Util. Law Project of N.Y. v New York State Pub. Serv. Commn. (263 AD2d 879 [3d Dept 1999]), where the Public Service Commission (PSC) proposed a plan to promote competition in retail electric markets by allowing consumers to purchase electricity from private electric service providers. The petitioners challenged the plan on grounds that the plan exempted the private electricity providers from certain consumer protection regulations, claiming the exemption to be beyond the PSC’s legislative power. The Appellate Division found that because the thrust of the pleadings was a challenge to the PSC’s authority to grant the exemption, a nonfiscal activity, “rather than a specific challenge to the expenditures of identifiable State funds,” that the petitioners did not have standing under State Finance Law 123-b (see id. at 881). More recently, the Court of Appeals, in Godfrey v Spano (13 NY3d 358 [2009] [involving a challenge to recognition of out-of-state same-sex marriages]), found insufficient plaintiffs “conclusory allegations that defendants ‘are expending and will expend State funds and/or resources supplied from New York State tax revenue,’ without claiming specific expenditures that would not otherwise have been incurred” (id. at 374).
Very clearly, the thrust of the petition is a challenge to respondents’ authority to adopt part 182, a nonfiscal activity. Petitioners’ allegations with regard to the unlawful expenditure of state funds are nonspecific and conclusory, and thus fail to support a claim of standing under State Finance Law § 123-b. The court finds that the ABLI petitioners do not have standing under State Finance Law § 123-b.
In summary, the court finds that the causes of action set forth in the petitions are not ripe for adjudication, and therefore do not constitute a justiciable controversy. The court further finds that the petitioners/plaintiffs do not have standing. The court concludes the respondents’ motion to dismiss must be granted, and the petitions/complaints must be dismissed.
Accordingly, it is ordered, that respondents/defendants motion to dismiss the petitions/complaints is granted; and it is fur *750 ther ordered and adjudged, that the consolidated action/ proceeding be and hereby is dismissed.

. See 6 NYCRR 617.2 (s).

. An incidental take is defined as “any taking of a species listed as endangered or threatened in section 182.5 of this Part and otherwise prohibited by section 11-0535 of the Environmental Conservation Law that is incidental to, and not the intended purpose of, an otherwise lawful activity.” (6 NYCRR 182.2 Q].)

. “ ‘Net conservation benefit’ means a successful enhancement of the species’ subject population, successful enhancement of the *742 species’ overall population or a contribution to the recovery of the species within New York. To be classified as a net conservation benefit, the enhancement or contribution must benefit the affected species listed as endangered or threatened in this Part or its habitat to a greater degree than if the applicant’s proposed activity were not undertaken.” (6 NYCRR 182.2 [n].)

. The Riverhead petitioners and the ABLI petitioners each commenced a separate combined action/proceeding in February 2011, with the Riverhead action/proceeding being filed in Suffolk County and the ABLI action/ proceeding being filed in Albany County. The two actions/proceedings were consolidated pursuant to a stipulation of the parties dated March 28, 2011, which was “so-ordered” by the undersigned on April 8, 2011. The venue for the consolidated action/proceeding was stipulated to be Albany County.

. The regulatory amendments imposed more stringent requirements including (1) variances for the expansion of preexisting, nonconforming structures, which do not conform to shoreline set-back requirements, (2) review of subdivision of lots involving wetlands, (3) expanded review of subdivision of parcels divided by roads, and (4) a more restrictive definition of hunting and fishing cabins.

. As described by the Town of Riverhead, the purpose of the subdivision was to facilitate marketing of the property. The only action taken was to place lot lines on the subdivision map, without any proposed physical disturbance of the land.