*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  August 6, 2015                    520060
_____

In the Matter of KEVIN B.
    ACEVEDO,
                        Appellant,

        v                                    OPINION AND ORDER

NEW YORK STATE DEPARTMENT OF
    MOTOR VEHICLES et al.,
                        Respondents.
_____

Calendar Date:   June 2, 2015

Before:   Peters, P.J., Lahtinen, Garry and Lynch, JJ.;
          McCarthy, J., vouched in.

                    _____


        Gerstenzang, O'Hern, Sills & Gerstenzang, Albany (Eric H.
Sills of counsel), for appellant.

        Eric T. Schneiderman, Attorney General, Albany (Jeffrey W.
Lang of counsel), for respondents.


                    _____


Peters, P.J.

        Appeal from a judgment of the Supreme Court (Ceresia Jr.,
J.), entered March 12, 2014 in Albany County, which dismissed
petitioner's application, in a combined proceeding pursuant to
CPLR article 78 and action for declaratory judgment, to, among
other things, review a determination of respondent Department of
Motor Vehicles denying petitioner's application for a driver's
license.

        Petitioner was convicted of driving while ability impaired
in 2003 and driving while intoxicated in both 2006 and 2008.  As
a result of his 2008 conviction, petitioner's driver's license

was revoked for a minimum period of one year (see Vehicle and Traffic Law § 1193 [2] [b] [3]).  In February 2012, respondent Department of Motor Vehicles (hereinafter DMV) approved petitioner's application for a new license, but withdrew its approval three days later.  Shortly thereafter, DMV imposed a statewide moratorium on the review of licensure applications filed by applicants with multiple alcohol- and/or drug-related driving offenses pending the adoption of emergency regulations affecting the relicensing of recidivist drivers.

Emergency regulations were adopted in the fall of 2012 and, as is pertinent here, provide that respondent Commissioner of Motor Vehicles "shall," for a period of at least five years plus the revocation period imposed by the Vehicle and Traffic Law, deny the relicensure application of any person with three alcohol-related convictions, but no serious driving offense,[1] during a 25-year look-back period (15 NYCRR 136.5 [b] [3]).  Once the waiting period expires, the Commissioner may, in her discretion, grant a relicensing application, in which event she "shall" issue the applicant a restricted license "for a period of five years and shall require the installation of an ignition interlock device in any motor vehicle owned or operated by such person for such five-year period" (15 NYCRR 136.5 [b] [3] [ii]).  The regulations expressly reserve to the Commissioner the discretion to deviate from the regulatory scheme when presented with "unusual, extenuating and compelling circumstances" (15 NYCRR 136.5 [d]).

Citing the newly-enacted regulations, DMV denied petitioner's application for a new license, and the Administrative Appeals Board affirmed.  Petitioner then commenced this combined CPLR article 78 proceeding and declaratory judgment action against DMV and its Commissioner seeking an order granting

_____

[1]  A "[s]erious driving offense" means: "(i) a fatal accident; (ii) a driving-related Penal Law conviction; (iii) conviction of two or more violations for which five or more points are assessed on a violator's driving record pursuant to [15 NYCRR 131.3]; or (iv) 20 or more points from any violations" (15 NYCRR 136.5 [a] [2]).

him a new driver's license and declaring that the regulations are, among other things, unconstitutional. Supreme Court dismissed petitioner's application without a hearing, prompting this appeal.

## I. JUSTICIABILITY

We first find that Supreme Court properly dismissed, as nonjusticiable, petitioner's challenges to those provisions of the regulations imposing a lifetime license revocation and requiring the issuance of a restricted license and the installation of an ignition interlock device. A controversy is justiciable when the plaintiff in an action for a declaratory judgment has "an interest sufficient to constitute standing to maintain the action" (American Ins. Assn. v Chu, 64 NY2d 379, 383 [1985], appeal dismissed and cert denied 474 US 803 [1985]; accord Police Benevolent Assn. of N.Y. State Troopers, Inc. v New York State Div. of State Police, 40 AD3d 1350, 1352 [2007], appeal dismissed and lv denied 9 NY3d 942 [2007]). The claimed harm must be "direct and immediate" – as opposed to merely "insignificant, remote or contingent" – and such that it cannot be "prevented or significantly ameliorated by . . . administrative action or by steps available to the complaining party" (Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 520 [1986], cert denied 479 US 985 [1986] [emphasis added]; accord Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, 86 AD3d 756, 760 [2011], appeal dismissed 17 NY3d 947 [2011], lv denied 18 NY3d 806 [2012]).

A lifetime license revocation applies to persons with either (1) five or more alcohol- or drug-related driving convictions or incidents during his/her lifetime or (2) three or four alcohol- or drug-related driving convictions or incidents and a serious driving offense within the 25-year look-back period (see 15 NYCRR 136.5 [b] [1], [2]). The imposition of a restricted license and the installation of an ignition interlock device are required only after the applicable waiting period has expired and the Commissioner has approved the person's application for a new license (see 15 NYCRR 136.5 [b] [3] [ii]).

Here, inasmuch as petitioner had three alcohol-related

driving convictions and no "serious driving offense" during the 25-year look-back period, he was not subject to a lifetime license revocation. As for his challenge to that part of 15 NYCRR 136.5 (b) (3) (ii) concerning the imposition of a restricted license and the installation of an ignition interlock device, such "harm" cannot eventuate until petitioner's revocation period has expired and, even then, only if an application for relicensing is subsequently approved by the Commissioner.[2] Alternatively, petitioner could apply for and be granted an exemption from the restricted license and ignition interlock device requirements (see 15 NYCRR 136.5 [d]), under which circumstance that portion of the regulation would, obviously, have no impact upon him. As "the harm sought to be enjoined is contingent upon events which may not come to pass, the claim . . . is nonjusticiable as . . . speculative and abstract" (Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 240 [1984]; see Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 97 AD3d 1085, 1087 [2012], mod on other grounds 23 NY3d 1 [2014]; Matter of Adirondack Council, Inc. v Adirondack Park Agency, 92 AD3d 188, 191 [2012]; Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, 86 AD3d at 761). Accordingly, Supreme Court properly dismissed as nonjusticiable petitioner's challenge to 15 NYCRR 136.5 (b) (1) and (2) and that portion of 15 NYCRR 136.5 (b) (3) (ii) that requires the issuance of a restricted license and the installation of an ignition interlock device.[3]

---

[2] At the time that Supreme Court reviewed DMV's denial of his application for a new license, petitioner's revocation period had not expired. It matters not that, since then, he has been issued a restricted license and has been required to install an ignition interlock device, as the justiciability of a claim is determined at the time the trial court reviews the challenge (see Hussein v State of New York, 81 AD3d 132, 135 [2011], affd 19 NY3d 899 [2012]).

[3] To the extent that petitioner argues that the requirement of justiciability is inapplicable here because he and respondents entered into a stipulation staying 19 particular actions and/or

## II. SEPARATION OF POWERS

Next, we address petitioner's argument that the Legislature preempted the field of "DWI law" by enacting Vehicle and Traffic Law article 31. The doctrine of field preemption "has limited utility where, as here, a perceived conflict between legislative policy and administrative action at the same level of government is at issue" (Boreali v Axelrod, 71 NY2d 1, 15 [1987]; see Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d 186, 193 [1988]). Rather than engaging in a preemption analysis, the dispositive inquiry is whether the legislative branch of government intended, as evidenced by the scope and language of the enabling legislation, "to grant regulatory authority over a specific subject matter to an administrative agency which exists as part of the coequal executive branch" (Boreali v Axelrod, 71 NY2d at 15; see Matter of Nicholas v Kahn, 47 NY2d 24, 31-32 [1979]).

The Legislature has vested the Commissioner with broad authority to promulgate regulations to "regulate and control the exercise of" DMV's powers (Vehicle and Traffic Law § 215 [a]). Among those powers is the Commissioner's authority to approve or deny relicensing applications (see Vehicle and Traffic Law § 510 [5]), including those submitted by persons whose licenses were revoked for alcohol- or drug-related driving offenses (see Vehicle and Traffic Law § 1193 [2] [c] [1]). Indeed, the Vehicle and Traffic Law provides that "[a] license . . . may be restored by direction of the [C]ommissioner but not otherwise" (Vehicle and Traffic Law § 510 [5]) and that, "[w]here revocation [of a license] is mandatory," a new license shall not be issued for the statutorily-designated period of time, "except in the discretion of the [C]ommissioner" (Vehicle and Traffic Law § 510 [6]).

---

proceedings pending the resolution of this action/proceeding and five others, which were deemed to be representative of "the core legal issues" present in the stayed actions/proceedings, it is sufficient to note that justiciability cannot be waived (see Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, 86 AD3d at 760 n 4; 333 Cherry LLC v Northern Resorts, Inc., 66 AD3d 1176, 1178 n 3 [2009]).

Further, while the Vehicle and Traffic Law establishes minimum periods of revocation for alcohol- or drug-related driving offenses, it also provides that revoked licenses may only be restored "in the discretion of the [C]ommissioner" (Vehicle and Traffic Law § 1193 [2] [c] [1]) and "that the [C]ommissioner may, on a case[-]by[-]case basis, refuse to restore a license which would otherwise be restored [under the statute], in the interest of the public safety and welfare" (Vehicle and Traffic Law § 1193 [2] [b] [12]). Together, these statutory provisions lead to the inexorable conclusion that the Legislature intended to grant DMV regulatory authority over the relicensing of persons with multiple alcohol- and/or drug-related driving offenses (see Matter of Shearer v Fiala, 124 AD3d 1291, 1292 [2015], lv denied 25 NY3d 909 [2015]).

We now consider whether DMV exceeded the bounds of that regulatory authority by making "'broad-based public policy determinations'" when it promulgated the challenged regulations (Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health & Mental Hygiene, 110 AD3d 1, 7-8 [2013], affd 23 NY3d 681 [2014], quoting Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 169 [1993], cert denied 512 US 1213 [1994]). To determine whether an administrative agency has usurped the power of the Legislature, courts must consider whether the agency: (1) "operat[ed] outside of its proper sphere of authority" by balancing competing social concerns in reliance "solely on [its] own ideas of sound public policy"; (2) engaged in typical, "interstitial" rulemaking or "wrote on a clean slate, creating its own comprehensive set of rules without the benefit of legislative guidance"; (3) "acted in an area in which the Legislature has repeatedly tried — and failed — to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions"; and (4) applied its "special expertise or technical competence" to develop the challenged regulations (Boreali v Axelrod, 71 NY2d at 12-14 [internal quotation marks and citations omitted]; see Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 125 AD3d 105, 108 [2014], lv denied 25 NY3d 963 [2015]).

We find that, in enacting the challenged regulations, DMV

did not act on its own ideas of public policy, but rather implemented the Legislature's policies of promoting highway safety and reducing instances of impaired and intoxicated driving. Indeed, the Legislature has expressed its concern with "[t]he ever-increasing number of accidents, personal injuries and deaths resulting from alcohol[-] or drug-related traffic offenses" (Vehicle and Traffic Law § 520) and, to address that concern, has prohibited the impaired or intoxicated operation of a motor vehicle and has assigned "minimum" periods of license revocation for violating this prohibition (Vehicle and Traffic Law §§ 1192, 1193 [2] [b]). Once such "minimum" period expires, the Commissioner is vested with discretion to approve or deny relicensing requests (Vehicle and Traffic Law § 1193 [2] [c] [1]). As the dissent recognizes, Vehicle and Traffic Law § 1196 (5) grants the Commissioner the authority to vacate a revocation order and reinstate a license before expiration of the minimum statutory period if the applicant completes an alcohol and drug rehabilitation program. However, that statutory provision does not distinguish between first-time offenders and recidivist drivers and affords the Commissioner the "discretion" to evaluate the varying circumstances of applicants and determine whether to cut the minimum revocation period short (Vehicle and Traffic Law § 1196 [5]). Inasmuch as the Commissioner has the discretion to continue license revocations beyond the statutory minimum period and recidivist drivers pose a heightened risk to the safety of public roadways (see NY Reg, Mar. 13, 2013 at 46), we find that respondents promulgated 15 NYCRR 136.5 (b) (3) in furtherance of legislatively-defined policy and thus engaged in permissible, interstitial rulemaking.

Contrary to the dissent, we do not view 15 NYCRR 136.5 (b) (3) as replacing the discretion granted to the Commissioner over relicensing determinations. Rather, the regulation represents the Commissioner's discretionary determination to impose, in addition to the statutory minimum, a five-year revocation period upon anyone who committed three or four alcohol- or drug-related driving offenses within a 25-year period. By promulgating such a regulation, the Commissioner not only revealed how she chooses to exercise her discretion with respect to three- or four-time recidivists, but ensured that such discretion is uniformly applied to all similarly situated persons. Moreover, while 15

NYCRR 136.5 (b) (3) defines the Commissioner's general position on persons with three or four qualifying offenses, the Commissioner retains the discretion to deviate from that position in "unusual, extenuating and compelling circumstances" (15 NYCRR 136.5 [d]).

Further, while it is true that various bills involving the imposition of stricter penalties upon recidivist drivers have been introduced into the Senate and Assembly, most of those bills have failed to make it out of committee (see Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d at 170; Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 125 AD3d at 110-111). As the early demise of such proposed legislation could well be an expression of the Legislature's intent to keep intact the Commissioner's broad discretionary authority over relicensing, we cannot conclude, on this factor alone, that respondents exceeded their authority in promulgating the regulations (see generally Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d at 170). Finally, inasmuch as respondents relied on their own empirical data regarding the number of statewide personal injuries and deaths caused by recidivist drivers, we find that a fair amount of expertise was required to promulgate the regulations. Accordingly, upon consideration of these coalescing factors, we hold that respondents did not run afoul of the constitutional separation of powers doctrine by promulgating the regulations.

## III. STATUTORY CONFLICT

Nor do we conclude that 15 NYCRR 136.5 (b) (3) conflicts with the Vehicle and Traffic Law. Vehicle and Traffic Law § 1193 (2) (b) sets "minimum periods" during which the Commissioner cannot reissue a revoked license, but also vests the Commissioner with complete discretion to determine whether relicensing is appropriate once the minimum period expires. While the statutory provision applicable to petitioner includes a 10-year look-back period, that look-back period is used only to set the minimum revocation period (see Vehicle and Traffic Law § 1193 [2] [b] [3]). Because the relevant statutory provisions merely involve the fixing of minimum revocation periods, we discern no conflict between the enabling statute and 12 NYCRR 136.5 (b) (3)'s five-

year revocation period or 25-year look-back period (see Matter of Shearer v Fiala, 124 AD3d at 1292).

## IV. RETROACTIVITY/EX POST FACTO PROHIBITION

We also reject petitioner's assertion that DMV's denial of his request for a new license constituted an impermissible retroactive application of 15 NYCRR 136.5 (b) (3) and a violation of the Ex Post Facto Clause of the US Constitution. Legislation is retroactive when it "takes away or impairs vested rights" (McKinney's Cons Laws of NY, Book 1, Statutes § 51 [a]) or "'alter[s] past transactions or considerations'" (Matter of Scism v Fiala, 122 AD3d 1197, 1198 [2014], quoting Matter of Allied Grocers Coop. v Tax Appeals Trib., 162 AD2d 791, 792 [1990]). As we have iterated, a driver's license is "a personal privilege subject to reasonable restrictions and revocation by [the Commissioner in] her discretionary powers," not a vested right (Matter of Scism v Fiala, 122 AD3d at 1198; see Matter of Kenny v Fiala, 127 AD3d 1359, 1360 [2015]; see also Matter of Lap v Axelrod, 95 AD2d 457, 459 [1983], lv denied 61 NY2d 603 [1984]). The regulations are not retroactive merely because they permit the consideration of an alcohol- or drug-related driving conviction that occurred before their promulgation to determine a person's eligibility to enjoy the privilege of possessing a driver's license (see Matter of St. Clair Nation v City of New York, 14 NY3d 452, 456-458 [2010]; Forti v New York State Ethics Commn., 75 NY2d 596, 609 [1990]). Finally, the prohibition contained in the Ex Post Facto Clause of the US Constitution applies only to penal statutes and not to regulations such as those at issue here (see Kellogg v Travis, 100 NY2d 407, 410 [2003]; Matter of Santiago v Roy, 117 AD3d 1352, 1353 [2014]; Matter of Suce v Taylor, 37 AD3d 886, 887 [2007], lv denied 9 NY3d 803 [2007]; Matter of Robinson v Bennett, 300 AD2d 715, 716 [2002]; but see Matter of McKevitt v Fiala, 129 AD3d 730, 731 [2015]).

## V. REMAINING ISSUES

Petitioner's remaining contentions do not require extended discussion. While a conviction for aggravated unlicensed operation of a motor vehicle in the first degree and a youthful

offender adjudication of driving while intoxicated are excluded from the regulation's definition of alcohol- or drug-related driving conviction or incident (see 15 NYCRR 136.5 [a] [1]), a rational basis exists to support these exclusions, as a person need not be under the influence of alcohol or drugs to be convicted of aggravated unlicensed operation of a motor vehicle in the first degree (compare Vehicle and Traffic Law § 511 [3] [a] [i], with Vehicle and Traffic Law § 511 [3] [a] [ii], [iii]), and youthful offender adjudications "are confidential and may not be made available to any . . . public . . . agency" (CPL 720.35 [2]).  Lastly, because petitioner's challenges implicated purely legal questions, Supreme Court did not err in dismissing the petition without a hearing (see Matter of Kenny v Fiala, 127 AD3d at 1360; Matter of Akshar v Mills, 249 AD2d 786, 788 [1998], lv dismissed 92 NY2d 962 [1998]).

Lahtinen and McCarthy, JJ., concur.


Lynch, J. (dissenting).

We respectfully dissent.  Initially, we agree with the majority that petitioner's standing is limited to challenging those aspects of the regulations that impact him, but would expand that challenge to all of 15 NYCRR 136.5 (b) (3) (ii).  A party has standing if he or she has "a legally cognizable interest that is or will be affected by the [administrative] determination" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987] [emphasis added]).  Here, petitioner, who received a statutory penalty of a one-year revocation as a result of his conviction, commenced this combined CPLR article 78 proceeding and declaratory judgment action when respondent Commissioner of Motor Vehicles denied his application for relicensure and imposed a five-year stay (see 15 NYCRR 136.5 [b] [3] [ii]).  At the time, he was directly impacted by the stay, but it was evident that he would only be eligible for an A2 restricted license, coupled with

an ignition interlock device, during the next five years[1] (see 15 NYCRR 136.5 [b] [3] [ii]). This is clearly a situation where the future event, i.e., the application for a reissued license and the issuance of a restricted license under the regulation, were contemplated by the parties (see Hussein v State of New York, 81 AD3d 132, 135-136 [2011], affd 19 NY3d 899 [2012]). In our view, a challenge to the initial five-year stay necessarily implicates the Commissioner's continuing regulatory authority and, thus, the regulation either stands or falls as a package.

Next, we also agree with the majority that the Legislature has given the Commissioner extremely broad authority to regulate the issuance of licenses following a statutory revocation (see Vehicle and Traffic Law §§ 215, 510 [5]; 1193 [2] [b] [12]; [c] [1]). As provided by Vehicle and Traffic Law § 1193 (2) (c) (1), no new license shall be issued after a statutory revocation is imposed for an alcohol-related offense "except in the discretion of the [C]ommissioner" (emphasis added). That authority, however, must be tempered by the Commissioner's administrative role because, "[h]owever facially broad, a legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers doctrine permits" (Boreali v Axelrod, 71 NY2d 1, 10 [1987]). In our view, the Commissioner exceeded the scope of her regulatory authority by adopting, as pertinent here, emergency regulations that mandate a five-year stay of the relicensure application of any person with three alcohol-related convictions during a 25-year look-back period (see 15 NYCRR 136.5 [b] [3]). The same holds true for the subsequent five-year period during which the Commissioner has determined to allow, if at all, only an A2 restricted license, with an ignition interlock device (see 15 NYCRR 3.2 [c] [4]; 136.4 [b] [2]; 136.5 [b] [3]).

---

[1]  In his brief, the Attorney General candidly acknowledges that "petitioner would likely be affected" by the A2 restricted license and ignition interlock device requirements. It is undisputed that petitioner has since received an A2 restricted license, subject to the use of an ignition interlock device under 15 NYCRR 136.5 (b) (3) (ii).

The Vehicle and Traffic Law establishes firm criminal penalties and license sanctions for alcohol- and drug-related offenses that reflect a balance between public safety and the hardship encountered in losing one's driving privileges (see Vehicle and Traffic Law § 1193).  Relevant here, a driver's license must be revoked for a period of one year where the driver has at least one prior alcohol- or drug-related offense within a 10-year period (see Vehicle and Traffic Law § 1193 [2] [b] [3]).  Even then, the statute grants the Commissioner the authority to terminate such revocation upon the completion of alcohol and drug rehabilitation (see Vehicle and Traffic Law § 1196 [5]).

The question presented here is whether the Commissioner usurped the legislative policy-making role by effectively yielding her statutory discretion to a regulation that prohibits and then restricts the reissuance of a license for a 10-year period.  In our view, because the Commissioner "crossed the hazy 'line between administrative rule-making and legislative policy-making'" (Greater New York Taxi Assn. v New York City Taxi & Limousine Commn., ___ NY3d ___, ___, 2015 NY Slip Op 05514, *7, quoting Boreali v Axelrod, 71 NY2d at 11), this question must be answered affirmatively.  Upon consideration of the "coalescing circumstances" set forth by the majority (Boreali v Axelrod, 71 NY2d at 12-14; see Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 125 AD3d 105, 108 [2014], lv denied 25 NY3d 963 [2015]), as to the first two factors, we agree that the regulations are generally consistent with a strong legislative policy of promoting public safety by reducing alcohol-related driving incidents.  In application, however, we find that regulation impermissibly requires the Commissioner to act contrary to her statutory authority.  As set forth above, the statute grants the Commissioner discretion to reissue a license after a revocation period expires and even to terminate a one-year revocation once the driver meets certain conditions (see Vehicle and Traffic Law § 1196 [5]).  In contrast, the Commissioner has enacted a "general policy" to refuse to reissue a license for an extended five-year period in all cases absent a showing "of unusual, extenuating and compelling circumstances" (15 NYCRR 136.5 [d]).  This last qualifying phrase, in which the Commissioner has reserved the option of waiving the stay, does not resolve the

problem because, by definition, a five-year stay is the standard and not, of itself, a hardship. The waiver language speaks to an extreme scenario that frankly is difficult to define, but leaves intact a general stay policy. The net effect is predictable enforcement, without regard to the underlying circumstances. By imposing this regulatory limitation, it is our view that the agency "was 'acting solely on its own ideas of sound public policy'" (Boreali v Axelrod, 71 NY2d at 12, quoting Matter of Picone v Commissioner of Licenses, 241 NY 157, 162 [1925]). It is telling that, under the challenged regulation, petitioner's license has been effectively revoked for a six-year period (the initial one-year statutory revocation, plus the five-year regulatory stay). By comparison, had petitioner incurred the three alcohol-related offenses within a shorter, four-year period, statutorily his license would have been permanently revoked, subject to a mandatory waiver after five years (see Vehicle and Traffic Law § 1193 [b] [12]). In effect, by virtue of the new regulation, petitioner has been subjected to a longer revocation than that statutorily imposed upon a recidivist driver with a temporally worse driving record. This consequence shows that the Commissioner has simply gone too far.

Establishing what is in effect a general bar to unrestricted relicensure for a 10-year period following a statutory revocation, the Commissioner did not "merely fill in the details of broad legislation" (Boreali v Axelrod, 71 NY2d at 13). Rather, she abdicated her statutory mandate to exercise her discretion in favor of a hard and fast rule, waivable only under extremely limited circumstances. In contrast, and with respect to the third Boreali factor, prior to the promulgation of this emergency rule, the Legislature considered but did not enact "Charlotte's Law," a bill that would have required harsher penalties for recidivist drivers (see 2011 NY Senate-Assembly Bill S6496, A8934b).[2] Correspondingly, the Legislature has since

_____

[2] Focused on recidivist drivers, the proposed legislation provided for a permanent revocation in an instance, as here, where a driver had three alcohol-related offenses in violation of Vehicle and Traffic Law § 1192, within an expanded 25-year look-back period. Contrary to petitioner's argument, the challenged

adopted what is known as "Vince's Law" to heighten the criminal consequences of a recidivist offender. Specifically, Vehicle and Traffic Law § 1193 (1) (c) (ii) now provides that a driver with three Vehicle and Traffic Law § 1192 convictions within the preceding 15 years shall be guilty of a class D felony (see L 2014, ch 191, §§ 1, 2, 3 [eff Nov. 1, 2014]). By adopting a policy creating an automatic stay in all cases absent "unusual, extenuating and compelling circumstances," the Commissioner has "impose[d] a solution of [her] own" to address the public safety issue created by recidivist drivers (Boreali v Axelrod, 71 NY2d at 13). Based on the foregoing, we would grant the petition to the extent that 10 NYCRR 136.5 (b) (3) should be declared null and void, and remit the matter to the Commissioner for further consideration of petitioner's relicensure application.

Garry, J., concurs.

ORDERED that the judgment is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court

---

regulation does not mirror Charlotte's Law. While the regulation does embrace the 25-year look-back period, it does not go so far as to mandate a permanent revocation. Charlotte's Law did not advance beyond the legislative committee stage.